## GULF REFINING CO. v. CITY OF PHILADELPHIA.

### No. 18774.

District Court, E. D. Pennsylvania.

July 30, 1937.

On Motions for New Trial and Judgment N. O. V. Jan. 11, 1938.

Vincent A. Carroll, of Philadelphia, Pa., for plaintiff.

Samuel Feldman and Abraham Wernick, Asst. City Sols., and Joseph Sharfsin, City Sol., all of Philadelphia, Pa., for defendant.

MARIS, District Judge.

This is an action at law by the Gulf Refining Company (hereinafter referred to as the Company), against the City of Philadelphia (hereinafter referred to as the City), to recover the sum of $51,443.42, claimed to have been paid by the plaintiff to the defendant under a mistake of fact. A jury trial was waived by the parties.

### Findings of Fact

The Pennsylvania Act of July 22, 1913, P.L. 911, 53 P.S.Pa. § 4351, provides as follows: "That the directors of the Department of Wharves, Docks and Ferries, in any city of the first class, shall have authority, after the appropriation by councils, of said city, or by the Commonwealth of Pennsylvania, of the money required therefor, to erect and construct retaining structures adjoining the banks of navigable streams located within its corporate limits, for the purpose of protecting the channel of such streams; and when any such retaining structure shall have been erected or constructed the cost thereof per foot shall be filed in the office of said director, and no riparian owner, lessee or licensee, shall use any such retaining structure for the purpose of constructing, extending, altering, improving or repairing, any wharf, or other building in the nature of a wharf, or other harbor structure, or for other wharf purposes, without having previously paid to the said director of the city in which such retaining structure is erected or constructed the cost of erecting so much of said retaining structure as is so used; and

any such person who shall use any such retaining structure as aforesaid, before the cost thereof has been paid to the said director as aforesaid, shall pay to the said city a penalty of twenty-five dollars per day for every day on which such retaining structure shall be so used, to be collected as debts of a similar nature are now collected. All money paid to the director under the provisions of this act shall be paid by him into the city treasury, to be used by the said city, only for the purpose of developing, extending, and improving the wharves owned by the said city."

Philadelphia is a city of the first class, and pursuant to the provisions of this act it constructed timber bulkheads or retaining structures along the east bank of the Schuylkill River from the vicinity of Penrose Ferry Bridge to the vicinity of Haenns Wharf. These bulkheads were constructed between the years 1915 and 1918. Their purpose was to prevent the flat lands along the banks of the river from washing into the channel and also to permit the reclamation of these lands by the riparian owners. Subsequent to the construction of these bulkheads the low lands lying between them and the fast lands on the bank of the river were reclaimed by being filled in with dredged material.

From time to time over a period of years the Company acquired a number of tracts of land along the east bank of the Schuylkill River extending from a point below Penrose Ferry Bridge on the south to the vicinity of Haenns Wharf on the north. These tracts are shown and numbered upon a plan attached as Exhibit "A" to the statement of claim. The bulkheads in question are in front of and contiguous in whole or in part to the tracts numbered 6, 13, 14, 9, 10, 11 and 15.

The tract numbered 6 was acquired by the Company in April, 1924. On December 1, 1926, Birger F. Burman, an engineer of the Company, wrote to the Department of Wharves, Docks and Ferries of the City (hereinafter referred to as the Department), as follows:

"Gulf Refining Company,
"Philadelphia, Pa.
"December 1, 1926
"Dept. of Wharves, Docks & Ferries,
"Municipal Pier,
"Philadelphia, Pennsylvania.
"Gentlemen:

"Will you kindly furnish me with complete information and whatever data you have available covering the mud fence or bulk head which was constructed under your supervision some years ago at, Penrose Ferry Bridge on the North side of the Schuylkill River running in a Westerly direction from the Bridge.

"Thanking you in advance for your courtesy in this matter, I am,
"Yours very truly,
"EFP:ES                Birger F. Burman."

Up to this time there had been no communications between the officials of the City and the Company with regard to said bulkheads. On December 6, 1926, the Director of the Department replied to the Company as follows:

"Department of Wharves, Docks and Ferries
"December 6, 1926
"Mr. Birger F. Burman, Engineer,
"Gulf Refining Company,
"P. O. Box 1567,
"Philadelphia, Pa.
"Dear Sir:

"Answering your request of December 1st, for complete information regarding the mud fence that was constructed under the supervision of this Department some years ago along the east side of the Schuylkill River north of Penrose Ferry Bridge:

"There is forwarded herewith a copy of the Rules and Regulations of the Department of Wharves, Docks and Ferries, which, on page 13, quotes the Act of Assembly authorizing the Director of the Department to erect and construct retaining structures adjoining the banks of navigable streams for the purpose of protecting the channel of such streams. You will note that the Act prohibits any riparian owner from using any such structures without having previously paid to the Director the cost of the erection of such structures.

"Before the Department can accurately determine the cost of the mud fence that was built in front of your property, it will be necessary to have the District Surveyor furnish the exact length of your property along a line 32 feet inside of the established bulkhead and pierhead lines.
"Yours very truly,
"George F. Sproule,
"enc.                Director."

Transmitted with this letter was a pamphlet which set forth the Pennsylvania Act of July 22, 1913, P.L. 911, in full text.

Two days later the Chief Engineer of the Department forwarded to L. R. Jones, superintendent of the Company, a blue print from the Department's plans showing the location and type of construction of the bulkheads in question. Thereafter without demand or request on the part of the City the Company asked for a bill covering the cost of the bulkhead in front of the property designated as tract No. 6 and on April 11, 1927, the Director of the Department wrote the Company as follows:

"Department of Wharves Docks and Ferries
"Philadelphia.
"April 11, 1927
"Mr. L. R. Jones, Superintendent,
"Gulf Refining Company,
"P. O. Box 1567,
"Philadelphia, Pa.
"Dear Sir:

"In further reference to your request of March 24th, for a statement of cost of the timber bulkhead erected in front of your property by the City north from Penrose Ferry Bridge:

"Herewith for your information is an approved print from Department Sheet 3D-410, which indicates that the cost of the bulkhead structure erected in front of your property amounted to Eleven Thousand Three Hundred Sixty-Six Dollars and Eleven Cents ($11,366.11).

"Also forwarded is print from plan prepared and signed December 16, 1926 by the Surveyor and Regulator of the 1st District, who determined the dimensions of the bulkhead erected.

"In making payment for the cost of this structure, your check should be drawn to the order of the City of Philadelphia.
"Yours very truly,
"Geo. F. Sproule,
"encs. Director."

On April 18, 1927, the Department received a check from the Company in the amount of $11,366.11 in payment of the cost of said bulkhead. A receipted bill for this payment was mailed by the Director of the Department to the Company under date of April 26th. No bill for the amount paid had previously been rendered to the Company.

In September, 1928, the Company acquired title to tract No. 13, the agreement of sale having been signed in the previous June. It provided that the land was to be conveyed clear of all liens, easements and encumbrances "except the lien of the City of Philadelphia for the bulkhead, which the party of the second part agrees to pay to the City of Philadelphia, at such times as the same is used." On August 1st, L. R. Jones, superintendent of the Company, wrote to the Assistant Director of the Department as follows:

"August 1, 1928.
"Mr. James A. Dunn, Asst. Director,
"Dept. of Wharves, Docks and Ferries,
"Municipal Pier, Phila.
"Dear Sir:

"The enclosed print of our sketch #907 shows a tract of land on the Schuylkill River which the Gulf Refining Company recently bought from the E. C. Knight, Est.

"The Gulf Refining Company is now occupying the land and I believe it is the proper time to pay for the Bulkhead or Mud Fence built by the City on the river frontage of the tract, in 1915 to 1918, as indicated in red.

"I might say at this time that this section of Bulkhead has deteriorated considerable. Most of the spur piles are rotted on the top and several sections of the whaler are practically gone.

"We feel that some consideration should be given to this condition.
"Yours very truly,
"L. R. Jones,
"Superintendent."

To this letter the Director replied as follows:

"Department of Wharves, Docks and Ferries
"Philadelphia
"August 3, 1928
"Mr. L. R. Jones, Superintendent,
"Gulf Refining Company,
"30th St. & Penrose Ferry Avenue,
"Philadelphia.
"Dear Sir:

"Receipt is acknowledged of your favor of the first instant, file—F-2, enclosing a print of your sketch No. 907 and showing a tract of land on the Schuylkill River which your Company recently purchased from the E. C. Knight Estate, and stating that it is now your desire to pay for the mud fence built by the Department of Wharves, Docks and Ferries, in front of this tract

in the years 1915 and 1916, as indicated in red on said plan, and in reply you are advised:

"The frontage referred to amounts to 2,519.383 U.S. standard lineal feet, which section of bulkhead was installed by the Department at a cost of $17.27 per U.S. standard lineal foot. The cost of the 2,-519.383 U.S. standard lineal feet of bulkhead to be put into use by you at the present time, has therefore cost the City of Philadelphia $43,509.74. The figures above quoted do not include the sluice way of 90 feet in width on said property nor does it include the bulkhead in front of Penrose Ferry Avenue.

"Referring to the last paragraph of your letter in which you state that this section of bulkhead has deteriorated considerably and that you feel some consideration should be given this condition, you are advised that the Act of Assembly under which bulkhead was constructed, explicitly states—

"'* * * and when any such retaining structures shall have been erected or constructed the cost thereof per foot shall be filed in the office of said Director, and no riparian owner, * * * shall use any such retaining structure * * * without having previously paid to said Director * * * the cost of erecting so much of said retaining structure as is so used.'

"You will therefore note from the phraseology of the Act that it is impossible for me to make any allowance whatever from the original cost. You are further advised that timber under water does not decay and therefore any part of this fence continually covered by water is in as good a condition today as it was at the time it was constructed by the Department. Also, should the work be done under present day conditions, it would cost at least three times the sum the City is now charging you.

"In anticipation of your taking the land, I am forwarding to you herewith a bill as outlined above, for which you may forward to this Department a check to the order of the City of Philadelphia.

"Congratulating you upon the increase of your business in the Harbor of Philadelphia, and regretting my inability to make you an allowance owing to deterioration, I am

"Very truly yours,

"Richard Weglein,

"wkj–eds                          Director."

On August 10, 1928, Jones wrote the Director a letter enclosing a check for $43,-509.74, the letter reading as follows:

"Gulf Refining Company

"Philadelphia, Pa.,

"August 10, 1928.

"Mr. Richard Weglein, Director,
"Dept. Wharves, Docks & Ferries,
"City of Philadelphia,
"Municipal Pier, Foot of Chestnut St.,
"Philadelphia, Pa.

"Dear Sir:

"Referring to your letter of August 3rd with statement covering bulkhead or mud fence built by the Department of Wharves, Docks & Ferries in front of the land we recently purchased from the Knight Estate, I take great pleasure in enclosing herewith our check No. 19820, dated August 9, 1928, in the amount of $43,509.74, it being understood that the figures you quote do not include the sluiceway of ninety (90) feet in width on said property nor does it include the bulkhead in front of Penrose Ferry Avenue.

"Yours very truly,

"L. R. Jones,

"Enc.                          Superintendent."

In April, 1928, the Company acquired title to the tracts numbered 9, 10 and 11 and some time in June of that year L. R. Jones, superintendent of the Company, called upon Director Weglein of the Department and informed him that the Company was taking over these pieces of property and wished to pay for the bulkheads in front of them. On July 2, 1929, Director Weglein wrote L. R. Jones as follows:

"Department of Wharves, Docks and Ferries

"July 2, 1929

"Mr. L. R. Jones, Superintendent,
"Gulf Refining Company,
"30th and Penrose Ferry Ave., Phila.

"My dear Mr. Jones:

"Referring to your call in this office about two weeks ago in reference to taking over the balance of sheet pile bulkhead erected in front of your property in the vicinity of Yankee Point by this Department during the years 1915—1918, you are advised that the extent of bulkhead remaining unpaid for in front of your property is shown in red on the attached blue print, and was built under two contracts, as follows:

Contract 216—2,355.204 U.S.Std.Ft.
@ $17.27 per ft.—$40,695.56
Contract 234— 603.429 U.S.Std.Ft.
@ $17.81 per ft.— 10,747.86
———————
$51,443.42

The stated lengths and costs are exclusive of the 9-foot sluiceway where no bulkhead was erected by the City.

"Bill covering this bulkhead is enclosed herewith.

"Very truly yours,
"Richard Weglein,
"encl.                            Director"

On September 3, 1929, Jones forwarded to the Department a check for $51,443.42 together with the following letter:

"Gulf Refining Company
"Philadelphia.
"September 3, 1929
"Department of Wharves, Docks & Ferries,
"City Hall,
"Philadelphia, Pennsylvania.
"Gentlemen:

"Attn: Mr. Weglein, Director

"I am enclosing herewith Voucher for $51,443.42, covering bulkhead, built by the City, some years ago, around Yankee Point and what is known as the Peoples' Tract. It is my belief that this covers all bulkhead built by the City, which the Gulf Refining Company has purchased and is now occupying.

"This letter is being sent up with Mr. Drew.

"Thanking for your many courtesies, I am

"Yours very truly,
"L. R. Jones,
"Encl.                            Manager."

It is this last payment which the Company now seeks to recover from the City.

At no time did the City make any levy or assessment against the Company for the cost of any of said bulkheads nor was any demand ever made by the City or any of its officers or employees for the payment of the same.

The tracts of land numbered 14 and 15 were acquired by the Company in 1930. The City has never sent any bill to the Company or made any demand upon it for the payment of the cost of the bulkheads in front of these tracts nor has payment therefor been made by the Company.

The Company strongly contends that the Chief Engineer of the Department stated to L. R. Jones that the Company had no right to use or occupy any of the tracts of land until it had paid for the bulkheads contiguous thereto. I am unable to find from the evidence that any such statement or representation was made either by the chief engineer or any other officer or employee of the City, however. On the contrary I find that no such statement or representation was ever made to L. R. Jones or any other officer or employee of the Company and that neither L. R. Jones or any other person on behalf of the Company ever inquired of the officials of the City whether the Company could use its land without having previously paid for the bulkheads. I further find that the payments in question were all made by the Company voluntarily and without any misrepresentation or mistake of fact.

The three payments so made were placed in the treasury of the City in a special fund and were used for the development, extension and improvement of the wharves owned by the City as provided by the Act of 1913.

## Discussion

The Company in its statement of claim filed in this case averred that the City levied, charged and assessed against it the cost of construction of the bulkhead in question amounting to $51,443.42, and that relying on the City's representations that it had the right to make the assessment the Company paid that sum to the City. At the trial, however, the Company was unable to produce any evidence whatever that a levy, charge or assessment had been made against it by the City. On the contrary it was quite clear, as I have found, that the payment was made by the Company voluntarily and without any coercion or duress on the part of the City.

The Company now contends, however, that the City, through the chief engineer of its Department, represented to L. R. Jones, the Company's superintendent, that the Company could not make any use of its land until the bulkheads abutting thereon had been paid for. As to this it is sufficient to say that I am satisfied from the evidence that no such representation was ever made, and I have so found. In considering this question it must be borne in mind that the initiative in this whole matter was taken by the Company, not the City. The first communication was Burman's letter of December 1, 1926, to the Department in which he requested complete information regarding the bulkheads. In reply to this

letter the City sent Burman a complete copy of the Act of Assembly under which the bulkheads were built and which set forth the circumstances under which abutting property owners were required to pay for them. Far from being an attempt at misrepresentation this was a complete disclosure to the Company of the statutory provisions requiring payment of the cost of bulkheads by abutting property owners only when they were to be used for wharf purposes. The correspondence thereafter clearly indicates that it was not the City, but the Company, which in each instance brought up the matter of payment.

But even if such a representation had been made it would not have been a misrepresentation of fact, but merely the statement of a legal conclusion. It has long been held that money voluntarily paid on a claim of right where there has been no mistake of fact cannot be recovered back on the ground that the party supposed, he was bound in law to pay it when in truth he was not. Union Insurance Co. v. City of Allegheny, 101 Pa. 250; Peebles v. City of Pittsburgh, 101 Pa. 304, 47 Am.Rep. 714; Shenango Furnace Co. v. Fairfield Township, 229 Pa. 357, 78 A. 937; Investor's Realty Co. v. City of Harrisburg, 281 Pa. 200, 126 A. 236. This rule is particularly applicable to the present case for here, as I have pointed out, the first step taken by the City was to send the Company a complete copy of the Act of Assembly under which the payments were to be made. The Company, therefore, unquestionably had just as much opportunity to ascertain its legal rights and liabilities with respect to the bulkheads as did the City.

When thereafter it tendered payment of their cost to the City it can only be assumed that the Company desired to pay the cost in order to have the full and unrestricted right at any time in the future to use the bulkheads for the purposes specified in the Act of 1913. The fact that it did not contemplate such use immediately was of no consequence since it is clear under the terms of the act that payment of the cost of the bulkheads must be made prior to the use of them.

The Company urges that the transactions were intended to effect a sale of the bulkheads by the City to the Company and that the Department had no power under the statute to pass title. Consequently it says that there has been a failure of consideration. I do not so view the transaction, however. It seems clear to me that what the Company desired to secure by its payments was the unfettered use under the Act of 1913 of the bulkheads in front of its property, together with the control of them which would necessarily accompany such right of use. Whether it acquired title or whether the Department could pass title is, I think, entirely immaterial. What the Company desired to get and what it did get through the payments it made was the perpetual use of the bulkheads in question free and clear of any and all future claims by the City against the abutting property for their cost.

On the other hand the City urges that since the payments in question were placed by it in a special fund and applied to the purposes specified by the statute its position has been changed and the Company is, therefore, estopped from recovering the payments. In the view I have taken, however, further consideration of this point is unnecessary. Nor is it necessary to consider the constitutionality of the statute, a point raised in the statement of claim, since it was not pressed by the Company at the trial. It is sufficient to say that the Circuit Court of Appeals for the Third Circuit has held it constitutional. City of Philadelphia v. Standard Oil Co., 79 F.2d 764.

### Conclusions of Law

The payment by the Company to the City of $51,443.42, the cost of the bulkheads in question, was a voluntary payment not made under a mistake of fact, but was in anticipation of and for the perpetual right to use said bulkheads.

The finding of the court must be in favor of the City.

I accordingly find against the plaintiff and in favor of the defendant.

### On Motions for New Trial and for Judgment N. O. V.

The facts in this case are fully set forth in my opinion filed July 30, 1937. Upon those facts I concluded that the payment made by the plaintiff to the defendant was not made under a mistake of fact but that, if there was any mistake, it was one of law from which the plaintiff was not entitled to be relieved. The plaintiff thereupon filed a motion for a new trial and for judgment n. o. v., which motions have now been argued.

In support of its motions the plaintiff urges that I erred in making certain findings of fact and in failing to make certain other findings. As to this, however, it is sufficient to say without detailed discussion that I have again carefully considered my findings in the light of the evidence and am satisfied that they correctly state the facts disclosed thereby.

The plaintiff also argues that I erred in my conclusion of law that a payment made under the circumstances disclosed in this case could not be recovered back and it cites in support of its position Leather Manufacturers' Nat. Bank v. Merchants' Nat. Bank, 128 U.S. 26, 9 S.Ct. 3, 5, 32 L.Ed. 342. In the case Mr. Justice Gray said: "Whenever money is paid upon the representation of the receiver that he has either a certain title in property transferred in consideration of the payment, or a certain authority to receive the money paid, when in fact he has no such title or authority, then, although there be no fraud or intentional misrepresentation on his part, yet there is no consideration for the payment, and the money remains, in equity and good conscience, the property of the payer, and may be recovered back by him, without any previous demand, as money had and received to his use."

That case, however, was a suit to recover back the amount paid upon a forged endorsement of a check and it clearly has no application here. There clearly the receiver of the money had no title to the check and consequently no authority whatever to receive payment thereon. Here the Director of the Department of Wharves, Docks and Ferries of the City was expressly authorized by the Pennsylvania Act of July 22, 1913, P.L. 911, to receive from the plaintiff as a riparian owner payment of the cost of bulkheads constructed by the City in front of its property.

By the payment which it made the plaintiff unquestionably acquired a valuable right, namely, the right to use the bulkheads in question for the purpose of constructing, extending, altering, improving or repairing any wharf, or other building in the nature of a wharf, or other harbor structure, or for other wharf purposes. The payment was required by the provisions of the act to be made before any such use could take place and clearly the City had neither the duty nor the right to inquire of a riparian owner as to the extent to which or the time when it proposed to make use of a bulkhead for which it was making payment. If the plaintiff had no intention of using the bulkhead for wharf purposes, but made the payment because it understood the law to require such payment as a condition precedent to the use of the abutting land, its mistake was purely one of law, and consequently, for the reasons stated in my former opinion, furnishes no support for this action.

The motions for a new trial and for judgment n. o. v. are refused.