OPINION
{¶ 1} Nationwide Mutual Insurance Company appeals from the grant of summary judgment by the Lake County Court of Common Pleas to Elizabeth and Eddie Godwin in a declaratory action. We affirm.
 {¶ 2} This appeal arises from events occurring July 15, 2003 at the intersection of State Routes 166 and 528 in Thompson, Ohio. Mr. and Mrs. Godwin were driving their motorcycles northbound on State Route 528, when Mr. William Chepla pulled his minivan from a stopped position heading east along State Route 166. Mr. Chepla struck the Godwins sequentially, causing each of them serious bodily injury.
 {¶ 3} Mr. Chepla was insured under an automobile liability policy, no. 92 34 H 594202, issued by Nationwide Mutual Insurance Company, with bodily injury liability limits of $100,000 per person, and $100,000 per occurrence. Regarding bodily injury, the policy provides, at the "Coverage Agreement, Property Damage And Bodily Injury Liability Coverage":
 {¶ 4} "1. We will pay for damages for which you are legally liable as a result of an accident arising out of the:
 {¶ 5} ownership'
 {¶ 6} maintenance or use; or
 {¶ 7} * * *
 {¶ 8} of your auto. * * *
 {¶ 9} "2. Damages must involve:
 {¶ 10} * * *
 {¶ 11} b) bodily injury.
 {¶ 12} "3. We will pay such liability losses up to the limits stated in the Declarations. * * *"
 {¶ 13} The Nationwide policy further provides, at "Limits and Conditions of Payment, Amounts Payable For Liability Losses":
 {¶ 14} "Our obligation to pay for * * * Bodily Injury Liability losses is limited to the amounts per person and per occurrence stated in the Declarations. The following conditions apply to these limits:
 {¶ 15} "The limit shown:
 {¶ 16} "* * *
 {¶ 17} "* * *
 {¶ 18} "c) for Bodily Injury Liability for each occurrence is, subject to the per person limit described in paragraph b) above, the total limit of our liability for all covered damages when two or more persons sustain bodily injury * * * as a result of one occurrence."
 {¶ 19} The Nationwide policy defines neither "accident" nor "occurrence."
 {¶ 20} The Godwins filed separate actions against Mr. Chepla in the Lake County Court of Common Pleas. July 20, 2004, Nationwide filed a declaratory action in that court, requesting a declaration that there had been only one "occurrence" under its policy with Mr. Chepla — i.e., loss of control of his minivan — thus limiting the Godwins' recovery to the per occurrence policy limits, $100,000. The parties stipulated that Mr. Chepla's negligence was the cause of the Godwins' injuries, and that the case was for policy limits.
 {¶ 21} April 15, 2005, Nationwide moved for summary judgment. The Godwins opposed. By a judgment entry filed June 21, 2005, the trial court denied Nationwide's summary judgment motion. Essentially, that court held that Nationwide's failure to define the terms "accident" and "occurrence" within its policy created an ambiguity, entitling each of the Godwins to a recovery up to the per occurrence policy limits. October 14, 2005, the trial court filed an amended judgment entry, entering judgment in favor of the Godwins, and determining that there was no just cause for delay. This appeal timely ensued, Nationwide making two assignments of error:
 {¶ 22} "I. The trial court erred in holding that the policy language of Nationwide's insurance policy was vague and ambiguous for failing to define the terms `accident' and `occurrence.'
 {¶ 23} "II. The trial court erred in applying case laws from other jurisdictions when Ohio courts have clearly adopted the `causation theory' when interpreting a policy limits clause of a liability insurance policy."[1]
 {¶ 24} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 25} The Supreme Court of Ohio stated in Dresher v. Burt,75 Ohio St.3d 280, 296, 1996-Ohio-107, that: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying thoseportions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 26} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate pursuant to Civ.R. 56(E). Appellate courts review a trial court's grant of summary judgment de novo.Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v.Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 27} "It is well settled that the construction of written contracts, including contracts of insurance, is a matter of law.Alexander v. Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241
* * *, at paragraph one of the syllabus; Leber v. Smith,70 Ohio St.3d 548, 553, 1994-Ohio-361, * * * (citation omitted). Accordingly, interpretations of insurance contracts are likewise subject to a de novo standard of review. Nationwide Mut. FireIns. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108,1995-Ohio-214 * * *. In so doing `[c]ommon words * * * will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' Alexander,53 Ohio St.2d 241 * * *, at paragraph two of the syllabus." Bunosky v.Metro. Property and Cas. Ins. Co., 11th Dist. No. 2005-P-0073,2006-Ohio-2768, at ¶ 12. (Parallel citations omitted.)
 {¶ 28} "* * * [W]here the provisions of an insurance policy are clear and unambiguous courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties, Stickelv. Excess Ins. Co. (1939), 136 Ohio St. 49, paragraph one of the syllabus, nor read into the contract a meaning not placed there by an act of the parties, Motorists Ins. Co. v. Tomanski
(1970), 27 Ohio St.2d 222, 226; Olmstead v. Lumbermens Mutl.Ins. Co. (1970), 22 Ohio St.2d 212, 216, nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary, Jackson v. Metropolitan Life Ins.Co. (1973), 34 Ohio St.2d 138, 140; Fidelity Cas. Co. v.Hartzell Bros. Co. (1924), 109 Ohio St. 566." Gomolka v. StateAuto Mutl. Ins. Co. (1982), 70 Ohio St.2d 166, 168.
 {¶ 29} "Where, however, it may reasonably be concluded that the language of a policy is ambiguous and may therefore be subject to different interpretations, a universally applied axiom of construction becomes appropriate to resolve the ambiguity. As stated in Butche v. Ohio Cas. Ins. Co. (1962),174 Ohio St. 144, 146:
 {¶ 30} "`* * * [P]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured.'" Gomolka at 168.
 {¶ 31} There are no disputed facts in this case: we have been invited to engage in the purely legal exercise of contract construction. Nationwide failed to define the terms "accident" and "occurrence" in the subject policy. Though couched as two assignments of error, Nationwide simply invites us to hold that these terms — the keystones of any liability policy — have received, by judicial construction in this state, such clear and definite meanings as to render their bare, undefined use in an automobile liability policy clear and unambiguous. Cf. 57 Ohio Jurisprudence 3d (2005) 414, Insurance, Section 328. Nationwide maintains that the courts of Ohio clearly adhere to the "causation view," which holds that policy limits clauses refer to the cause of the insured event, when construing the terms "accident" or "occurrence." Banner v. Raisin Valley, Inc. (N.D. Ohio 1998), 31 F.Supp. 591, 593. The rationale for this theory is that these terms should be defined by determining whether there is but one proximate cause for a series of injuries. ProgressivePreferred Ins. Co. v. Derby (June 15, 2001), 6th Dist. No. F-01-002, 2001 Ohio App. LEXIS 2649, at *8-9.
 {¶ 32} We decline the chalice proffered.
 {¶ 33} As support for its position, Nationwide cites to three decisions: Banner; Derby; and Greater Cincinnati Chamber ofCommerce v. Ghanbar, 157 Ohio App.3d 233, 2004-Ohio-2724.
 {¶ 34} These cases are distinguishable from that instant.
 {¶ 35} In Banner, the Northern District of Ohio, sitting in diversity, was presented with a situation wherein a Michigan resident, driving a truck titled to a Michigan corporation, struck four vehicles in Carroll Township, Ottawa County, Ohio. Id., at 591-592. Plaintiffs, the persons driving the various vehicles struck, claimed that there were four separate accidents, thus entitling each to a recovery up to the per occurrence limit under the truck driver's liability policy. Id. at 592-593.
 {¶ 36} The district court disagreed. It reasoned as follows:
 {¶ 37} "The policy definition of accident refers to `continuous' or `repeated' exposure to the same conditions. Such definition contemplates multiple injuries resulting from a single cause. The limitation of liability section clearly states that the limit applies regardless of the number of vehicles involved in the accident. Thus, `accident,' as defined in the policy, encompasses accidents that involve multiple injuries and multiple vehicles." Banner at 592.
 {¶ 38} The district court continued by noting its interpretation of the subject policy complied with the causation view for determining the number of accidents or occurrences under a liability policy. Banner at 593. That court noted that this is a majority view throughout the United States in determining the meaning of the words accident or occurrence in liability policies, and, absent controlling Ohio or Michigan precedents, that it should be applied. Id. at 593-594.
 {¶ 39} In Derby, the Sixth District was presented with a situation wherein appellee traffic control flagger, Rebecca Derby, was backed over by a dump truck, which then ran forward over her again. Id. at *1-2. She and her husband filed actions against the dump truck owner and its driver, as well as against her own employer. Id. at *2-3. Progressive, insurer for the dump truck owner, filed a declaratory action, requesting that the Fulton County Court of Common Pleas declare that had been only one "accident" to Mrs. Derby. Id. at *3-4. The actions were consolidated; and, in summary judgment proceedings, the trial court determined that the repeated crushings of Mrs. Derby constituted two "occurrences." Id. at *3.
 {¶ 40} The Sixth District reversed the trial court. Derby
at *18. Key to its determination was the definition of the term "accident" in the subject Progressive policy:
 {¶ 41} "The Progressive policy defines an `accident' as:
 {¶ 42} "`a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of your insured auto.'
 {¶ 43} "In addition, the section of the policy limiting liability reads, in material part: `For the purpose of determining our Limit of Liability * * *, all bodily injury * * * resulting from continuous or repeated exposure to substantially the same conditions shall be considered as resulting from one accident.' A plain reading of this language can lead only to the conclusion that `accident,' as used in the Progressive liability insurance policy includes a situation, such as the one before us, that involves multiple injuries arising from a single cause."Derby at *6-7. (Emphasis sic.)
 {¶ 44} The Sixth District then when on to a general discussion of the causation view of determining the number of accidents or occurrences under a liability policy. Derby at *7-13.
 {¶ 45} In Ghanbar, the First Appellate District, considered a case wherein a drunk driver crashed through a barricade at the Cincinnati Oktoberfest, injuring people around a bandstand.Ghanbar, at ¶ 2. The Cincinnati Chamber of Commerce, sponsor of the Oktoberfest, was sued by the injured parties. Id. at ¶ 4. It filed a declaratory action against the tortfeasor's insurer, Progressive Insurance Company, to determine the extent to which Progressive could be held responsible. Id. at ¶ 5. In summary judgment proceedings, the trial court determined that there had been only one "accident" under the terms of the Progressive policy. Id. at ¶ 6.
 {¶ 46} On appeal, the First District affirmed. Ghanbar at ¶ 12. It noted that the subject insurance policy defined an accident as "`a sudden, unexpected and unintended occurrence.'" Id. at ¶ 9. The court noted: "[a] single, indivisible course of conduct caused the injuries in question, and the trial court did not err in holding that the incident constituted a single occurrence with multiple victims." Id. at ¶ 10. Appellant argued that the failure to define accident in terms of "`continuous or repeated exposure to the same conditions,'" should bar application of the causation view to the case. Id. at ¶ 11. The First Appellate District held:
 {¶ 47} "[w]e find no merit in Ghanbar's argument. First, we note that the trial court did not mention the causation theory in its entry, so Ghanbar's argument that the court applied that theory is simply not supported in the record. Moreover, even if the trial court did apply the causation theory, we hold that there was no error. * * * The trial court's inquiry into whether a single cause had resulted in the injuries would have been proper even in the absence of language defining an `accident' in terms of causation. The question whether there had been a single accident under the policy language was inextricably linked to the question of causation * * *." Ghanbar at ¶ 12.
 {¶ 48} In sum, both the decisions in Banner and in Derby,
while citing to the causation view in determining that one accident or occurrence had resulted in multiple injuries, were fundamentally based on construction of the term "accident" in the subject liability policies. And, the definition of accident in each policy demanded those courts find that one accident or occurrence had resulted in multiple injuries. Only the decision of the First Appellate District in Ghanbar actually supports Nationwide's position herein: i.e., that an accident or occurrence must be viewed solely in terms of the tortious conduct giving rise to the injuries, rather than the effects upon the injured parties. And, even the Ghanbar court refused to endorse the causation view entirely. Rather, it held that the trial court's construction of the subject policy was correct even in the absence of causation theory. Id. at ¶ 12.
 {¶ 49} In this case, Nationwide provided no definition of either "accident" or "occurrence" in its policy. A person unversed in the technicalities of insurance law might, therefore, easily conclude that Mr. Chepla's striking each of the Godwins, sequentially, constituted separate accidents or occurrences, rather than the single accident or occurrence of losing control of the minivan.
 {¶ 50} Nationwide's entire argument hinges on the assertion that the courts of Ohio have adopted the causation view when construing the terms "accident" and "occurrence" in liability policies, and thus, that it is not required to define the terms in its policies. Nationwide is simply wrong that the "causation view" is standard Ohio common law. We respectfully acknowledge the opinions of the Northern District of Ohio, and those of our brethren in the First and Sixth Appellate Districts. However, it seems to us that the decisions of these courts relied on by Nationwide are too thin to support the considerable weight of defining such vital liability policy terms as "accident" and "occurrence." In particular, we are reminded that the Ohio courts of appeals sit, primarily, to correct error of law. The Supreme Court of Ohio is the principle progenitor of new common law. In a case such as this, potentially affecting every liability policy issued in this state, we choose to follow the law as we find it.
 {¶ 51} Nationwide failed to provide any definition of the terms "accident" and "occurrence" in the liability policy in question. The contract is ambiguous, and must be construed against it. The assignments of error are without merit. The judgment of the Lake County Court of Common Pleas is affirmed.
Donald R. Ford, P.J., William M. O'Neill, J., concur.
[1] We note that while Nationwide sets forth these two assignments of error at the commencement of its brief, it fails to argue them separately, as required by App.R. 16(A). Thus, we shall treat Nationwide's argument as one and indivisible — as indeed it is. Cf. App.R. 12(A)(2).