[Cite as *Extendicare Health Servs., Inc. v. Dunkerton*, 2017-Ohio-427.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| EXTENDICARE HEALTH SERVICES, INC., d.b.a. MAPLEWOOD CARE CENTRE, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2015-P-0004** |
| - vs - | : | |
| HERBERT DUNKERTON, | : | |
| Defendant, | : | |
| MICHAEL DUNKERTON, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2014 CV 01161.

Judgment:  Reversed and judgment entered for appellant.

*Sara M. Donnersback* and *Matthew G. Burg*, Weltman, Weinberg & Reis Co., L.P.A., 323 West Lakeside Avenue, Suite 200, Cleveland, OH  44113-1099 (For Plaintiff-Appellee).

*Terry G.P. Kane*, Kane & Kane, 111 East Main Street, Suite B, P.O. Box 167, Ravenna, OH  44266 and *Timothy R. Thomas*, 402 South Chestnut Street, Ravenna, OH  44266 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}    Appellant, Michael Dunkerton, appeals the trial court's decision holding him responsible for $25,228.43 in nursing home expenses incurred for the care of his father, Herbert Dunkerton.  For the following reasons, we reverse.

**{¶2}** Herbert broke his leg in 2010 and was initially transferred to the Woodlands nursing home. His Medicare coverage was terminated, so appellant had his father transferred to appellee's facility, Maplewood Care Centre in May of 2010. On June 3, 2010, appellant executed Herbert's admission agreement with Maplewood as his "Legal Representative for Financial Decisions."

**{¶3}** The admissions officer advised appellant that she would seek reinstatement of Herbert's Medicare coverage. This reinstatement was eventually denied. Despite repeated requests by Maplewood, neither appellant nor his wife, Andrea Dunkerton, applied for Medicaid on Herbert's behalf.

**{¶4}** Appellant also executed a payor confirmation agreement with Maplewood on July 20, 2010 as his father's "Legal Representative for Financial Decisions." This agreement indicated that Herbert owned a home valued at $75,000 and that he had monthly income of $1,800 from social security and a pension. It also stated that Herbert would be subject to the private pay rates and that the current amount due was $6,510.

**{¶5}** Appellant paid appellee $3,225 from Herbert's funds when he was admitted in May of 2010. Appellant paid appellee another $4,000 in July of 2010 at about the same time as the execution of the payor confirmation. Appellee discharged Herbert in October 2010 for nonpayment.

**{¶6}** Appellee, Extendicare Health Services dba Maplewood Care Centre, filed suit against Herbert and Michael Dunkerton. Appellee secured a default judgment against Herbert in 2011. Appellee filed its amended complaint in 2014 against Michael alleging breach of contract and the fraudulent conveyance of Herbert's funds. The case proceeded to bench trial before a magistrate, who recommended judgment in appellee's favor. Appellant filed objections to the magistrate's decision and

2

supplemental objections to the magistrate's decision, which were overruled. The trial court agreed with the magistrate and entered judgment for appellee in the amount of $25,228.43. Appellant filed a motion for reconsideration, which was denied. The trial court held that appellant breached his duty as his father's attorney-in-fact when he refused to apply for Medicaid for his father.

{¶7} Appellant asserts three assignments of error, which we collectively address on appeal:

{¶8} "The trial court erred to the prejudice of defendant-appellant Michael Dunkerton in finding that he violated his contractual duties as a financial representative of his father in the management of his father's financial resources for the payment of services provided to the father as a resident of appellee Maplewood Care Center.

{¶9} "The trial court erred to the prejudice of defendant-appellant Michael Dunkerton in granting appellee judgment in the amount of $25,228.43.

{¶10} "The trial court erred to the prejudice of defendant-appellant in finding him personally liable for the payment of $25,228.43 for services provided to his father while a resident of appellee Maplewood Care Center."

{¶11} To establish a claim for breach of contract, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and resulting damages to the plaintiff. *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 2002-Ohio-443, ¶27, 771 N.E.2d 874 (10th Dist.2000). If a written agreement is clear and unambiguous, its interpretation is a matter of law, which we review de novo. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.,* 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984); *Nationwide Mut. Ins. Co. v. Godwin*, 11th Dist. Lake No. 2005-L-183, 2006-Ohio-4167, at ¶27.

3

{¶12} Appellant argues that the trial court's decision erroneously holds him responsible as his father's surety, which is contrary to the agreements. He also asserts that the agreements do not authorize the imposition of personal liability on appellant as Herbert's attorney-in-fact. We agree.

{¶13} Appellant executed the two contractual agreements as his father's attorney-in-fact. Appellant signed the admission agreement as Herbert's "Legal Representative for Financial Decisions" upon his father's admission into appellee's facility. The last paragraph of this twelve-page agreement states in part on the signature page:

{¶14} "By our signatures, we acknowledge that we have received, read, and executed this Admission Agreement * * *. **EXCEPT IN THE CASE OF A FINANCIALLY RESPONSIBLE SPOUSE, AND EXCEPT FOR THE LEGAL REPRESENTATIVE FOR FINANCIAL DECISION'S OBLIGATIONS UNDER THIS AGREEMENT, THE LEGAL REPRESENTATIVE IS AWARE THAT THE CENTER MAY NOT REQUIRE HIM/HER TO ASSUME PERSONAL FINANCIAL RESPONSIBILITY FOR THE RESIDENT'S CARE, UNLESS HE/SHE HAS OTHERWISE AGREED TO BE THE RESIDENT'S VOLUNTARY GUARANTOR.**" (Emphasis in original.)

{¶15} The fourth section of the admission agreement provides in part:

"**IV. Financial Agreement and Provisions**

{¶16} "1. The Resident directs the designated legal representative to ensure that all payment obligations under this Agreement are met from the Resident's assets and to cooperate in obtaining, where applicable, coverage through Medicaid if necessary to meet the Resident's obligations under this Agreement."

4

{¶17} The admission agreement does not include any language stating that appellant is Herbert's guarantor or surety. In fact, it clearly provides that appellant, who signed as Herbert's legal representative for financial decisions, is *not* personally responsible for the costs associated with Herbert's care.

{¶18} Appellant also signed the payor confirmation agreement as his father's attorney-in-fact in July of 2010. Appellant listed Herbert's income and assets on the first page of this agreement, which included a checking account with no balance listed, real estate listed at a value of $75,000, and monthly income in the amount of $1,800. Appellant identified himself as the individual who controlled Herbert's monthly income and his checking account. The payor confirmation agreement states Herbert was subject to private pay: "**The resident is not covered by any of the previous listed payor types or has indicated a Medicaid application will be submitted.** Advance payment for the remainder of the current month and the following month are due upon admission. The amount due now is $6,510.00." (Emphasis in original.) It also states: "**The resident or responsible party is responsible to notify the Center Administrator when private funds are depleting so that the Center can assist the resident/responsible party with identifying other financial arrangements. It should be noted, however, that the obligations for payment sources always remain with the resident or responsible party**." (Emphasis in original.)

{¶19} Thus, as appellant contends, there is likewise no language in the payor confirmation agreement making appellant Herbert's guarantor. Instead, it also contains language to the contrary, i.e., that responsibility for payment remains with the resident or the responsible party. Appellant was neither.

{¶20} At the commencement of trial, appellee's counsel summarized the claims against appellant as breach of contract and the fraudulent conveyance of funds.

Appellant and his wife, Andrea, testified. Appellee's administrator also testified as a rebuttal witness.

{¶21} Appellant testified that Herbert entered appellee's facility to secure therapy and upper body strengthening to enable him to use a wheelchair so that he could eventually return home and live on his own.

{¶22} Appellant informed appellee's representative that his father could not afford to pay the private pay rates at the time of his admission. Appellant explained that he chose appellee's facility because they indicated that they would have Herbert's Medicare coverage reinstated. This never occurred. Neither appellant nor his wife appealed the denial of Medicare coverage for Herbert's stay at Maplewood. Michael assumed that Maplewood would have appealed.

{¶23} Appellee's admission officer repeatedly told Michael to apply for Medicaid for Herbert after Medicare refused to reinstate his coverage. Appellee's administrator confirmed that a resident's family must appeal a denial of coverage, and that Herbert was required to go on private pay status until appellant submitted his Medicaid application. The administrator also called appellant to follow up on the status of Herbert's Medicaid application, but he never received a response. The administrator explained that once a resident is approved for Medicaid benefits, all of that resident's income is paid directly to the state to offset the taxpayer dollars spent on his care and medical expenses. Appellant never submitted the requisite Medicaid application on his father's behalf and never appealed the denial of his Medicare coverage for his stay and care at Maplewood.

{¶24} Appellant confirmed that his father transferred the title of his home to him approximately one year before Herbert entered Maplewood. Half of this real property was already subject to a Medicaid lien as a result of nursing home care expenses

incurred by appellant's mother before she died. Andrea testified that they never attempted to sell Herbert's house because of this lien. On cross examination she denied knowing about Medicaid's five-year look back period on the transfer of assets. She also denied understanding that an individual's receipt of Medicaid benefits is based on his income and assets.

**{¶25}** Appellant paid his father's household expenses, utilities, and Andrea $200 per month for assisting Herbert from his father's monthly income during his stay at appellee's facility. Andrea was not a licensed caregiver, but explained that she ran errands for Herbert, cooked for him, and scheduled and attended doctor's appointments with him. Appellant confirmed that he received appellee's monthly billing statements, but did not pay them. Instead, he chose to maintain his father's residence since he believed he would eventually return home. No one else resided in the home. Appellant also spent his father's income caring for his father's pets and purchasing candy, food, and clothing to take to his father. Appellant and Andrea admitted that they benefitted from the large grocery store purchases that were paid for with Herbert's income. Appellant also paid his personal credit card statement with his father's funds and explained that he was paying himself back for the $4,000 credit card charge for his father's care at Maplewood.

**{¶26}** Appellee discharged Herbert in October of 2010 based on nonpayment. He spent approximately one week at his home until he was admitted into a VA facility, where he passed away in 2012.

**{¶27}** Once it was clear that Herbert's Medicare coverage would not be reinstated, appellant had an obligation, pursuant to his status as his father's attorney-in-fact and signator to the agreements with appellee, to submit an application for Medicaid on Herbert's behalf, to pay appellee's bills from his father's income and

7

assets, or to secure his father's care elsewhere. He failed to do any of these and instead allowed his father to incur additional debt at appellee's facility. Appellant's failures constitute a breach of his obligations as his father's attorney-in-fact.

{¶28} Notwithstanding appellant's breach of his obligations, the contractual agreements governing the parties' relationship do not make appellant his father's guarantor. Appellant signed the admission agreement and the payor confirmation as his father's attorney-in-fact, and neither document provides that appellant was Herbert's voluntary guarantor. Accordingly, the trial court's conclusion finding appellant responsible for his father's debt pursuant to these agreements is contrary to law. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.,* 15 Ohio St.3d 321, 322, 477 N.E.2d 271 (1984); *Nationwide Mut. Ins. Co. v. Godwin*, 11th Dist. Lake No. 2005-L-183, 2006-Ohio-4167, at ¶27.

{¶29} Further, R.C. 1337.092, "*When attorney in fact is not personally liable on contract for debt of principal*" states in part: "(A) If an attorney in fact enters into a contract in the representative capacity of the attorney in fact, if the contract is within the authority of the attorney in fact, and if the attorney in fact discloses in the contract that it is being entered into in the representative capacity of the attorney in fact, the attorney in fact is not personally liable on the contract, *unless the contract otherwise specifies.*" (Emphasis added.)

{¶30} R.C. 1337.092(B) states in part: "An attorney in fact is not personally liable for a debt of the attorney in fact's principal unless one or more of the following applies: * * * (3) The negligence of the attorney in fact gave rise to or resulted in the debt. * * * (4) An act of the attorney in fact that was beyond the attorney in fact's authority gave rise to or resulted in the debt."

8

{¶31} Here, appellee did not plead R.C. 1337.092 in its complaint nor did it raise the statute at trial. Appellee only pursued breach of contract and misappropriation claims. The trial court also never considered R.C. 1337.092 at trial, and neither party raises the same on appeal. Appellee's choice not to employ R.C. 1337.092 and the exceptions to an attorney-in-fact's liability in R.C. 1337.092(B)(1)-(5) as a basis for recovery precludes its application. *Gilchrist v. Saxon Mortgage*, 10th Dist. Franklin No. 12AP-556, 2013-Ohio-949, ¶22. Due process requires notice and an opportunity to be heard at a meaningful time and in sufficient time to permit a party to defend the allegations against him. *Bd. of Trustees of Columbia Twp. v. Albertson,* 9th Dist. Lorain No. 01 CA007785, 2001 WL 1240135, *5 (Oct. 17, 2001), citing *State v. Hochhausler,* 76 Ohio St.3d 455, 459, 668 N.E.2d 457 (1996); *W. Chester Twp. Bd. of Trustees v. Speedway Superamerica, L.L.C.,* 12th Dist. Butler No CA2006–05–104, 2007-Ohio-2844, 2007 WL 1662242, ¶43.

{¶32} Accordingly, appellant's assignments of error have merit, and the judgment of the Portage County Court of Common Pleas is reversed and judgment is entered for appellant.


CYNTHIA WESTCOTT RICE, P.J.

COLLEEN MARY O'TOOLE, J.,

concur.

9