**J. SPANG BAKING COMPANY, Plaintiff-Appellant, v. TRINITY UNIVERSAL INSURANCE COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20144.   Decided Feb. 18, 1946.

Kuth, Meyers & Bradley, Cleveland, for plaintiff appellant.
Quigley & Byrnes, Cleveland, for defendant appellee.

## OPINION

By SKEEL, P. J.

This cause comes to this court by appeal on questions of

law. The plaintiff appellant brought an action against the defendant appellee in the Common Pleas Court, seeking judgment in the sum of $1614.40 with interest from July, 1938. The plaintiff's action is founded upon failure of the defendant to settle certain claims and pending law suits against the plaintiff within the policy limits of an insurance contract previously entered into between them.

The defendant on the first day of August, 1935, for the consideration of $10,199.04, issued its policy of insurance insuring the plaintiff, among other things, against loss or damages within the policy limitations, because of personal injuries and loss of services sustained accidentally by others, occasioned by the operation and management of the plaintiff's motor vehicles, (about 237 in all) while being operated in the conduct of its business. The expiration date of the policy was August 1, 1936. The policy limits were $10,000.00 for one person in any one accident, and $20,000.00 for two or more persons in any one accident.

On May 23, 1936, shortly after noon, an accident occurred on Westview Avenue in the City of Cleveland, wherein one of plaintiff's trucks then being operated in the course of business came into collision with one Gerald Milko, a minor, of about three years of age, whereby said minor child sustained certain personal injuries.

Thereafter, two actions were filed in common pleas court of Cuyahoga County against the plaintiff herein, one on behalf of the said minor for the sum of $50,000.00, and the other on behalf of the father for the sum of $5,000.00.

The plaintiff reported the accident to the defendant immediately upon its occurrence, and furnished it with complete statements of the driver and all other available information. The plaintiff also gave defendant immediate notice of the filing of the lawsuits by Gerald Milko and his father and the defendant took complete charge of plaintiff's defense.

The plaintiff (defendant in Milko suits) left its defense in the hands of Mr. Byrnes the lawyer employed by the insurance company. As the case of the minor child was about to go to trial, an offer of settlement was made by the attorney for Gerald Milko and his father, Charles Milko, in the sum of $5,500.00 for both cases. Jordan, a representative of the Home Office of this defendant insurance company, who was present at the trial, communicated such offer to Collins, a representative of this plaintiff. Jordan stated to Collins that inasmuch as the defendant insurance company had reinsur-

ed one-half of its risk so that the most that defendant would lose if the case went to trial was $5,000.00, therefore, if the proposition of settlement was to be accepted defendant would contribute $4250.00 but no more, and the balance of $1250.00 would have to be contributed by the Spang Baking Co., plaintiff herein. The plaintiff alleges in its petition that by its refusal to accept said offer of settlement of $5,500.00, the defendant did not act in good faith and was guilty of fraud, negligence and arbitrary conduct to plaintiff's damage.

The evidence upon this point was in part as follows: Robert Dorsey, insurance broker, who sold the policy to the plaintiff, testified with reference to a conference at which Jordan, Collins, Byrnes and Dorsey were present, as follows:

"Q. And what took place at that conference?

A. Well, he wanted me to go to the Spang Baking Co. and ask them to put some money in to settle this case. In other words, they offered $4250.00 and they could settle it for $5500.-00 and they wanted Spang to pay the difference.

Q. Let me be more specific, Mr. Dorsey, so see if we understand each other. At the conference between Mr. William—that is William Byrnes, the attorney?

A. Yes, Quigley & Byrnes.

Q. Of Quigley & Byrnes and Mr. Jordan of the Trinity Universal Insurance Company and yourself and Mr. Collins, you were requested by—was it by Mr. Jordan or Mr. Byrnes, if you recall, or by both of them?

A. By both.

Q. By both?

A. Both of them.

Q. To go to the Sprang Baking Company and persuade them to put in some money, is that right?

A. Yes."

* * * * * *

"Q. After this proposition, did you say anything to them concerning it?

A. Say anything to the Trinity Universal?

Q. To either Byrnes or Jordan, their representative?

A. Yes. I said I could hardly recommend my client, as he is insured up to $10,000 to put in $1250.00 in this case. And, of course, Mr. Jordan said that he wasn't—Trinity Universal Company, were only interested in $5,000.00 anyhow. They were reinsured over $5,000.00, that was the extent of the loss anyhow."

* * * * *

580

"Q. Mr. Jordan, in the presence of Byrnes, the attorney, Mr. Collins and myself, suggested that I contact Mr. Spang.

Q. Mr. William Spang?

A. Mr. William Spang.

Q. Yes.

A. And ask him to contribute the difference between $4250.00 in settlement of this case and $5500.00 which is $1250.-00.

Q. And in response to that proposition what was said by you?

A. I said, I can't advise my client to contribute in this case due to the fact that he has $10,000 coverage and you could settle the case for $5500.00. And then Mr. Jordan said he was only interested up to $5,000 anyhow because that is all the Trinity would lose; the Reinsurance Corporation would lose the other part—pay the other."

* * * * * * *

"Q. After you saw Mr. William Spang?

A. Oh, yes, I came back, and told Mr. Jordan and Mr. Byrnes, Mr. Spang—

Q. You told Mr. Jordan and Mr. Byrnes what Mr. Spang's advice was?

A. That is right, exactly.

Q. What did you say to Mr. Jordan and Mr. Byrnes at that time?

A. I said, "Mr. Spang does not want to pay any part of it. He thinks he has sufficient coverage and I think you fellows should settle this case."

Q. Was there anything said at that conference by either Mr. Jordan or Mr. Byrnes about the seriousness of these cases?

A. Yes.

Q. All right.

A. Mr. Byrnes said the case would, no doubt go way over the limit of the policy if it went to court, went to trial. He was very much afraid of it."

Arnold B. Collins, the representative of the plaintiff testified in part as follows:

* * * * * * *

"A. The first conversation I recall with Mr. Byrnes was, oh possibly three weeks before the trial came up.

Q. Well?

A. When Mr. Byrnes called me on the telephone and told me this was a very dangerous case, he was afraid of it, and

it was quite possible it might go over our policy limits in case it went to trial. He asked whether we desired to bring in any additional counsel."

\* \* \* \* \* \* \*

"A. Well, the conference was between Mr. Byrnes attorney for The Trinity Universal Company—

Mr. Weh: I object and move that that go out.

The Court: 'Mr. Byrnes, attorney,' may stand, the balance of the answer may go out.

A. (Continuing). And Mr. Jordan, a representative from the Home Office of the Trinity Universal, Mr. Dorsey our insurance broker and myself. They told us about this offer they had now for $5,500.00 to settle the case. They felt it was a good offer.

The Court: Who said that?

A. Mr. Jordan and Mr. Byrnes both said that they felt that it was a good offer in settlement, in view of the serious injury to this boy. But they brought out the point of re-insurance and they could only pay—could only give them $5,000.00 regardless of whether they tried the case or whether they didn't and they said then that they were willing to pay $4250.-00 and asked that the Spang Baking Company pay the difference or $1250.00 and settle the case, and they advised us to settle it, both Mr. Jordan and Mr. Byrnes. So we told them that we would confer with Mr. Spang. And that noon Mr. Jordan— \* \* \* \*

A. I told them I don't see why we should pay anything; we have $10,000.00 coverage and you admit that the case should be settled, why don't you settle it? Why should we contribute. We have $10,000.00 insurance."

The case went to trial upon plaintiff's refusal to contribute $1250.00 toward the settlement and the jury returned a verdict for $10,000.00. Thereafter, the loss of service case of the father was called and an agreed judgment with plaintiff's consent was entered for $1600.00. Thereafter the lawyer for the Milkos offered to settle both judgments for $10,000.00 if no appeal was taken, but this offer was refused by this defendant and upon appeal to the Court of Appeals the judgment of Arnold Milko was affirmed. This defendant then paid the judgment of $10,000.00 which entirely consumed its obligation under the policy and the plaintiff was therefore compelled to pay the remaining judgment of $1600.00 and the costs of the action of $14.40 which amount the plaintiff in this action seeks to recover from the defendant.

Upon trial, at the conclusion of plaintiff's case, the defendant rested without the introduction of any evidence, and moved for judgment, which motion the court granted and plaintiff's petition was dismissed and the costs adjudged against it.

The plaintiff by this appeal claims that the trial court erred in rendering judgment for defendant in that such finding was contrary to law and that such judgment is manifestly against the weight of the evidence.

An insurance company owes the duty of good faith in conducting its assured's defense and negotiations for settlement of claims made against such assured that come within the terms of a policy of insurance issued by the insurer to the insured.

In the case of Universal Automobile Insurance Company v Culbertson, 54 S. E. (2d), 1061, (Court of Civil Appeals of Texas, 1932) the fifth paragraph of the syllabus provides:

"Negligent failure of insurer under automobile accident policy, to settle third person's claim for amount within limits of policy, renders insurer liable for total judgment against insured."

And on page 1062 of the opinion, the court said:

"* * * * * If the claim of Miss Witt could have been settled for less than the amount called for in the policy, prior to the time the judgment was rendered, and if the appellant, with knowledge of said fact, negligently failed and refused to settle said claim, then it would be liable to Culbertson for the total amount of the judgment recovered by Miss Witt, and he would not be required to actually pay the same before bringing suit."

"Stovers Furniture Co v American Indemnity
Company, (Texas Com. App.) 15 S. W. (2d), 544-545."

In the case of Tyger River Pine Company v Maryland Casualty Company, 170 S. E., 346 (Sup. Ct. of S. Carolina) (1925) one Erwin Chesser was an employee of The Tyger River Pine Company. The Maryland Casualty Company had insured the lumber company against loss occasioned by claims of injury of its employees while they were about their work, with a limit of $5,000.00 that it might be called upon to pay any one

employee. Chesser made claim for damages because of an alleged injury claimed to have been suffered because of the lumber company's fault. Efforts to settle the claim failed and suit was filed by the claimant and judgment was recovered in the sum of $7000.00 which was affirmed upon appeal. Thereupon this action was brought to recover from the insurance company the $2,000.00 the lumber company was compelled to pay over the policy limit with some additional expenses of $162.20.

The plaintiff's petition in part alleged that Chesser was "willing and anxious to settle the claim at a small and reasonable amount which a person of ordinary prudence would have accepted;" that the defendant "(who had the exclusive right under the policy to negotiate a settlement) giving no thought to plaintiff's rights in the premises, recklessly, negligently and in bad faith dallied with the offers of settlement for such unreasonable time that they were withdrawn and suit brought. * * * *." That "after the rendition of this verdict ($7000.00) Chesser, through his attorney, offered to settle for the sum of $5,000.00, but that the Casualty Company, thinking only of its own interests and in disregard of the interests of plaintiff, negligently, recklesly contumaciously, fraudulently and in bad faith, refused to settle for the sum offered, which would have saved the plaintiff harmless, insisted upon taking an appeal from the judgment, although any prudent person would have known that the appeal was without merit * * * *."

A demurrer to the petition was overruled and upon trial, judgment was rendered for the plaintiff. The court held:

"1.  Insurer negligently failing to settle case against insured by injured employee is liable for loss thereby caused even in absence of fraud or bad faith."

"2.  Evidence as to insurer's bad faith in refusing to settle claim of injured employee against insured **held** for jury.

3.  Insurer owes insured duty of settling personal injury claims if settlement is the reasonable thing to do."

And on page 349, the court said:

"Did the appellant act in good faith when it refused to settle a judgment of $7000 for the sum of $5000? That was a question for the jury to decide in the light of the contract of indemnity, the law pertaining to its construction and the evidence which showed the action and conduct of the appellant

in the premises; the jury by their verdict have in effect said that appellant did not act in good faith. We shall not disturb their finding."

"The charge that it was the duty of appellant to compromise the claim if that was the reasonable thing to do is supported by authority: In the annotation of the case of U. S. Casualty Co. v Johnston Drilling Co. (161 Ark 158, 255 S. W. 890) 34 A. L. R. 727, it was said:

'It has been held that an insurer against liability for accidents which assumes the duty of defending a claim owes the assured the duty of settling the claim if that is the reasonable thing to do.'

'Citing: Cavanugh Bros v General Accident Fire & Life Assurance Corp. 79 N. H. 186, 106 A. 604. This language was quoted and approved by this court in its opinion in the case of Chesser v Tyger River Pine Co. supra.' "

In Boling v New Amsterdam Casualty Co. 46 P. 916 (2nd) (Sup. Ct. of Oklahoma, 1935) a judgment had been rendered against Boling in the sum of $20,000 because of wrongfully causing the death of claimant's husband in an automobile accident. Boling paid the judgment after the New Amsterdam Casualty Company had paid $5000.00, the limit of its liability under an automobile liability insurance policy in force at the time of the accident. Boling, in his petition against the insurance company, alleged that the insurance company was guilty of bad faith in failing and refusing to avail itself of the opportunity to settle the case; that after the rendition of the judgment for $20,000 in the wrongful death case, the plaintiff offered to accept $6000.00 in complete satisfaction of the $20,-000.00 judgment if the amount were paid before the time limited for appeal had expired. Boling offered to pay $1000.00 or the excess above the policy limits (which was $5000.00). The insurance company refused to settle on that basis but offered to pay $1500.00 if Boling would pay $4500.00, but Boling refused. The policy gave the insurer the right to settle any claim within the policy limits and provided that the assured could not admit liability or incur any expense in settlement or otherwise without the written consent of the insurer.

The supreme court in reversing the trial court, ordering the demurrer overruled and returning the case for trial on the question of bad faith, in refusing to make a settlement, held, as is disclosed by paragraphs 2, 3 and 4 of the syllabus as follows:

"2. Indemnity insurer may, by its conduct, become liable for entire judgment against insured, though exceeding amount named in policy of insurance.

3. Indemnity insurer contracting to assume and assuming in trial court control of a claim against insured owes duty to act in good faith when an offer is made of settlement of judgment pending of appeal.

4. A petition claiming allegations appropriate to a cause of action based on bad faith or negligence in the performance of a contract and sounding in tort is sufficient and not demurrable."

The case of American Mutual Liability Ins. Co. of Boston, Mass., v Cooper, 61 Fed. Rep. 2d 446, held: (syllabus)

"1. Liability insurer may by its conduct become liable for entire judgment against insured though exceeding amount named in policy.

2. Liability insurer assuming exclusive control of claim against insured owes insured duty to act in good faith toward him.

3. Finding that liability insurer refusing settlement within amount of policy did nôt act in good faith and was therefore liable for entire judgment against insured exceeding amount of policy, held justified under evidence."

And on page 448 in the course of the opinion the court said:

"We are not concerned here with the question whether appellee could have recovered on the ground of mere negligence, since recovery is now sought only on the ground that appellant did not act in good faith toward him. In our opinion, the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. * * * * * * * *"

"It finally rejected a reasonable offer of settlement within that limit because the insured would not assume a part of its contractual liability. The jury was therefore warranted in finding that the insurer did not act in good faith toward the insured in considering Mrs. Auman's claim for damages, in refusing to settle, and in demanding that the insured contri-

bute to the settlement which it could and should have made at its own expense."

In the case of Douglass v United States, Fidelity & Guaranty Co. 81 N. H. 371, the court held:

"Insurer, invested with exclusive control of negotiations for settlement of claims, against insured, has not in absence of explicit and unmistakable provisions therefor in policy, right to arbitrarily refuse to make settlement of claim within limits of policy, which claim if sued on, may result in liability of insured in excess of policy limits."

See also: Mendota Elec. Co. v N. Y. Indem. Co. 169 Minn. 377.

The foregoing cases represent the almost unanimous holding of the courts of last resort on the duty of an insurer to act fairly and exercise reasonable care to protect the interests of its assured in any reasonable offer of settlement made within the coverage of the policy upon a claim against the assured.

The record herein discloses substantial evidence, in support of the issues presented by the pleadings. The court therefore committed prejudicial error in not submitting the issues of fact to the jury.

The judgment is therefore reversed and the cause remanded for further proceedings according to law.

MORGAN, J., concurs. LIEGHLEY, J., dissents.