OPINION
{¶ 1} Nationwide Ins. Co. appeals from the judgment of the Lake County Court of Common Pleas, granting summary judgment to QualChoice, Inc., and denying it to Nationwide, in a subrogation action. We affirm in part, reverse in part, and remand.
 {¶ 2} On or about January 4, 2005, Sandra Baldwin fainted while driving her car, went off the road, and was injured. Evidently, Ms. Baldwin has no history of such attacks. Through her employer, the Sherwin-Williams Company, Ms. Baldwin had health care insurance under a group plan issued by QualChoice, Inc. She also had an *Page 2 
automobile liability policy, issued by Nationwide, which included med pay coverage in the amount of $5,000. Both QualChoice and Nationwide appear to have paid for various medical services rendered Ms. Baldwin following her accident — sometimes evidently paying the same bill.
 {¶ 3} January 8, 2007, QualChoice filed its complaint in this action, alleging that, as Ms. Baldwin's subrogee, it was entitled to payment of some $9,743.60 from Nationwide for medical bills QualChoice had paid consequent upon the accident. Nationwide answered February 12, 2007. It further propounded discovery directed to obtaining the medical records and bills for which QualChoice had paid. August 17, 2007, the parties each filed motions for summary judgment. September 7, 2007, QualChoice filed its brief in opposition to Nationwide's motion. Counsel for Nationwide states that he did not receive the brief in opposition until September 12, 2007, and that the brief raised new issues.
 {¶ 4} September 14, 2007, the trial court denied Nationwide's motion for summary judgment; granted summary judgment in favor of QualChoice; and awarded QualChoice $6,140.38.
 {¶ 5} September 24, Nationwide filed a motion for "reconsideration" with the trial court, pursuant to Civ. R. 56, 59 and 60. Before that court ruled on the motion, Nationwide filed this appeal, October 12, 2007. Nationwide then moved this court to remand the matter to the trial court, so that it might rule on Nationwide's motion for reconsideration. January 4, 2008, this court filed its judgment entry, construing Nationwide's motion for reconsideration as a motion for relief from judgment, pursuant *Page 3 
to Civ. R. 60(B), and remanded this matter to the trial court for a ruling. The trial court denied Nationwide's motion by a judgment entry filed January 16, 2008.
 {¶ 6} Nationwide assigns six errors on appeal:
 {¶ 7} "[1.] The Trial Court Erred In Rendering A Monetary Verdict In Favor Of Appellee In The Absence Of Any Evidence Linking The Alleged Charges To The Subject Motor Vehicle Accident.
 {¶ 8} "[2.] The Trial Court Erred In Rendering A Monetary Verdict In Favor Of Appellee In An Amount That Exceeded The Amount Available Under Appellant's Policy.
 {¶ 9} "[3.] The Trial Court Erred In Denying Appellee's (sic) Motion To Vacate/Reconsideration.
 {¶ 10} "[4.] The Trial Court Erred In Granting Summary Judgment In Favor Of Appellee.
 {¶ 11} "[5.] The Trial Court Erred In Denying Appellant's Motion For Summary Judgment.
 {¶ 12} "[6.] The Trial Court Erred In Considering Appellee's Claims Because They Do Not Fall Within The Jurisdiction Of A Common Pleas State Court."
 {¶ 13} "`Pursuant to Civ. R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' Holik v. Richards, 11th Dist. No. 2005-A-0006, 2006-Ohio-2644, ¶ 12, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 293, * * *. `In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party.' Id. citing Civ. R. 56(C). Further, *Page 4 
the standard in which we review the granting of a motion for summary judgment is de novo. Id. citing Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, * * *.
 {¶ 14} "Accordingly, `(s)ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis of the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nomoving party's claim.'Brunstetter v. Keating, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 12, citing Dresher at 292. `Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' Id., citing Dresher at 293.
 {¶ 15} "* * *
 {¶ 16} "* * *
 {¶ 17} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and nonmoving party. In Dresher v. Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot *Page 5 
succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,
 {¶ 18} "The court in Dresher went on to say that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, * * *, is too broad and fails to account for the burden Civ. R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity withMitseff. (Emphasis added.)
 {¶ 19} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's *Page 6 
claim.' Id. at 276. (Emphasis added.)" Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶ 36-37, 40-42. (Parallel citations omitted.)
 {¶ 20} Under its first assignment of error, Nationwide presents two issues. It argues that the trial court erred in rendering a monetary verdict in favor of QualChoice, when there was a dispute regarding the actual amount of money QualChoice paid on behalf of Ms. Baldwin. Nationwide further argues that QualChoice failed to meet its burden of proving its damages under Civ. R. 56.
 {¶ 21} We agree.
 {¶ 22} As support for its damage claim, QualChoice submitted the affidavit of Yvonne Harris, one of its subrogation analysts. Attached to the affidavit is a single page document, on the letterhead of QualChoice's counsel, denominated a "System Claim Report," and dated August 16, 2007. This report contains information regarding services provided to Ms. Baldwin from January 4, 2005, through January 6, 2005. There are seven entries for these dates. Each entry contains the following information: (1) date of service; (2) the claim number; (3) the patient's name; (4) the total bill for the service; (5) the amount actually paid by QualChoice; (6) the "ICD9 Code"; and (7) the name of the service provider.
 {¶ 23} "Proof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services. * * *" Wagner v. McDaniels (1984),9 Ohio St.3d 184, at paragraph one of the syllabus. (Emphasis added.) In this case, the "System Claim Report" submitted by QualChoice is simply insufficient, under Wagner and Civ. R. 56, to support QualChoice's claim, since it does *Page 7 
not provide, except, perhaps, under the "ICD9 Code," any description of the medical services rendered Ms. Baldwin following her accident.
 {¶ 24} The first assignment of error has merit.
 {¶ 25} By its second assignment of error, Nationwide argues that the trial court erred in rendering a verdict in excess of Nationwide's med pay limits of $5,000. Further, in support of its motion to vacate in the trial court, Nationwide introduced the affidavit of one of its adjusters, Anthony Barone. Mr. Barone testified that Nationwide had paid some $955.22 to medical providers for Ms. Baldwin under the med pay portion of her automobile liability policy. Consequently, Nationwide argues that any subrogation claim of QualChoice is limited to the $4,044.78 still available under the med pay portion of the subject policy.
 {¶ 26} We agree. Certainly, Nationwide is not obligated to pay more than the limits of the med pay portion of Ms. Baldwin's policy, when and if QualChoice proves its own case. Generally, insurers are only liable for a judgment exceeding their policy limits if bad faith in handling a claim is shown. See, e.g., J. Spang Baking Co. v. Trinity Universal Ins.Co. (1946), 45 Ohio Law Abs. 577. There are no indicia of bad faith in this case. Further, a perusal of the subrogation clause in the QualChoice plan covering Ms. Baldwin reveals the following: "QualChoice HMO is subrogated to all your rights of recovery to the extent of the benefits it pays for Covered Services for an illness or injury for whichyou are entitled to recover payment from any other person * * *[.]" (Emphasis added.) As Ms. Baldwin's subrogee, QualChoice would only be entitled to collect what she could collect from Nationwide — and that is the policy limit of her Nationwide med pay provision, less any moneys already paid by Nationwide under that provision. *Page 8 
 {¶ 27} The second assignment of error has merit.
 {¶ 28} By its third assignment of error, Nationwide argues that the trial court committed "plain error" in failing to grant Nationwide's motion for relief from judgment, due to the errors attending the trial court's consideration of the damages in this case.
 {¶ 29} We do not review a trial court's grant or denial of a Civ. R. 60(B) motion through the prism of civil plain error. Rather, we review it for abuse of discretion. Ludlow v. Ludlow, 11th Dist. No. 2006-G-2686, 2006-Ohio-6864, at ¶ 24. An abuse of discretion is no mere error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. See, e.g., State v. Ferranto (1925),112 Ohio St. 667, 676-678.
 {¶ 30} Applying the foregoing standards to the trial court's judgment granting QualChoice a recovery of $6,140.38 indicates that court did not abuse its discretion. There is some evidence in the record that QualChoice has paid $6,140.38 on behalf of Ms. Baldwin. The evidence is insufficient for purposes of summary judgment — but the trial court's decision has support in the record, and, therefore, was not unreasonable.
 {¶ 31} The third assignment of error lacks merit.
 {¶ 32} By its fourth assignment of error, Nationwide argues that the trial court erred in granting QualChoice summary judgment, since its contract to provide Ms. Baldwin health benefits is ambiguous, or illusory. Nationwide points to Section Thirteen of the QualChoice plan, "COORDINATION OF BENEFITS," at paragraph 1, which provides, in relevant part: *Page 9 
 {¶ 33} "Plans That Do Not Coordinate. QualChoice HMO will pay benefitswithout regard to benefits paid by the following kinds of coverage:
 {¶ 34} "Individual (not group) policies or contracts;
 {¶ 35} "* * * [.]" (Emphasis added.)
 {¶ 36} Noting that its automobile liability policy was individual to Ms. Baldwin, Nationwide argues that allowing QualChoice to exercise its subrogation rights effectively negates the coordination of benefits clause, since QualChoice contracted to pay Ms. Baldwin medical benefits without regard to any individual coverage she might have.
 {¶ 37} The construction of written contracts being a matter of law, appellate courts review them de novo, giving common words and phrases their ordinary meanings, unless absurdity results, or a different meaning is clearly evidenced from the face or overall contents of the contract. Nationwide Mut. Ins. Co. v. Godwin, 11th Dist. No. 2005-L-183,2006-Ohio-4167, at ¶ 27. When an ambiguity exists in a written contract, the ambiguity must be construed against the drafter. Cf. id. at ¶ 29-30.
 {¶ 38} In this case, we respectfully disagree with Nationwide that the coordination of benefits clause and the subrogation clause in the subject QualChoice contract are mutually exclusive, rendering the contract ambiguous or illusory. As we noted before, there is some evidence in the record that QualChoice did pay for Ms. Baldwin's medical services following her accident, without regard to whether some other source of coverage (such as the med pay provision in her Nationwide contract) was available. It appears to us that the coordination of benefit provision relied on by Nationwide simply means that QualChoice will pay the medical bills submitted to it, without first attempting to get another possible source of coverage to pay. We find no conflict between such a *Page 10 
provision, and a subrogation clause allowing QualChoice to later pursue repayment from another source of coverage.
 {¶ 39} To the extent indicated, the fourth assignment of error lacks merit.
 {¶ 40} By its fifth assignment of error, Nationwide argues the trial court erred in failing to grant it summary judgment. In effect, Nationwide argues that QualChoice can have no subrogation right against it, due to the assignability clause in Nationwide's contract with Ms. Baldwin. That provides, in relevant part: "No interest or benefits in these coverages or cause of action against us arising out of these coverages can be transferred or assigned to another withoutour written consent." Nationwide contends that allowing QualChoice to exercise subrogation rights against the med pay provision of the Nationwide contract amounts to a transfer or assignment of benefits.
 {¶ 41} We respectfully disagree. Under the longstanding doctrine of subrogation, an insurer does not receive an assignment of its insured's rights: legally, it becomes the insured, to the extent it has paid for its insured's loss. See, e.g., Bogan v. Progressive Cas. Ins. Co.
(1988), 36 Ohio St.3d 22, 29.
 {¶ 42} The fifth assignment of error lacks merit.
 {¶ 43} By its sixth assignment of error, Nationwide asserts that the QualChoice plan providing Ms. Baldwin benefits is governed by the Employee Retirement Income Security Act ("ERISA"), and, consequently, that the trial court — and this court — lack jurisdiction of this matter.
 {¶ 44} We respectfully disagree. "ERISA preempts `any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.' ERISA § 514(a), 29 U.S.C. § 1144(a)." Penny/Ohlmann/Nieman, Inc.v. Miami Valley Pension *Page 11 Corp. (C.A. 6, 2005), 399 F.3d 692, 697. "Congress did not intend, however, for ERISA `to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.' LeBlanc v. Cahill,153 F.3d 134, 147 (4th Cir. 1998)." Penny/Ohlmann/Nieman at 698.
 {¶ 45} We do not reach the question of whether the subject QualChoice plan is an ERISA plan, for even if it is, this subrogation action does not implicate relations between the plan, and its beneficiary, Ms. Baldwin, or her employer, Sherwin Williams. It is simply a state law contract claim, arising out of tort, against a non-ERISA participant — Nationwide. "* * *'[W]hen an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law.'"Penny/Ohlmann/Nieman at 700, quoting Smith v. Provident Bank (C.A. 6, 1999), 170 F.3d 609, 617.
 {¶ 46} The sixth assignment of error lacks merit.
 {¶ 47} The judgment of the Lake County Court of Common Pleas is affirmed in part, and reversed in part, and this matter is remanded for further proceedings consistent with this opinion. QualChoice must produce evidence competent to prove what it paid for health care costs arising out of Ms. Baldwin's accident; and, Nationwide's liability, if any, is limited to the maximum of its med pay provision, less any monies it has expended for health care costs arising from the accident.
 {¶ 48} It is the further order of this court that the parties are assessed equally costs herein taxed.
 {¶ 49} The court finds there were reasonable grounds for this appeal. *Page 12 
MARY JANE TRAPP, J., concurs,
DIANE V. GRENDELL, P.J., dissents with a Dissenting Opinion.